**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
Case No.: 5:23-CV-00030-KDB-SCR

| | |
|---|---|
| **ALISON SCHULTZ, individually, and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Answer and Affirmative Defenses of Defendants Planet Automotive Group, LLC and Planet Automotive Group Hickory, LLC** |
| **PLANET AUTOMOTIVE GROUP, LLC,** | |
| **PLANET AUTOMOTIVE GROUP HICKORY, LLC, and** | |
| **HELM TECHNOLOGIES, LLC d/b/a CHATTERSPOT** | |

NOW COME Defendants Planet Automotive Group LLC and Planet Automotive Group Hickory, LLC (the "Planet Automotive Defendants"), by and through the undersigned counsel, and respond to the Second Amended Complaint of the Plaintiff as follows:

**Background**

1.     Plaintiff Alison Schultz ("Schultz") brings this case to protect the privacy rights of herself and classes of similarly situated people who were sent text messages on their phones on behalf of Defendants Planet Automotive Group, LLC ("Planet Automotive Group") and Planet Automotive Group Hickory, LLC ("Hickory") (collectively "Planet Automotive Defendants") by Defendant Helm Technologies, LLC d/b/a Chatterspot ("Chatterspot") (all Defendants are collectively referred to as "Defendants"). Defendants repeatedly sent text messages to Schultz and

the putative class members after Schultz and the putative class members expressly requested that Defendants stop sending them text messages.

**The Planet Automotive Defendants deny repeatedly sending text messages to Schultz and the putative class members after Schultz and the putative class members expressly requested that Defendants stop sending them text messages. Except as expressly admitted herein, all allegations in this paragraph are denied.**

2.      In the early 1990s, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

3.      The TCPA affords special protections for people who request to be placed on a company's internal do not call list. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after requesting to be placed on the company's internal do not call list is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

4.      In addition, the North Carolina legislature implemented the North Carolina Telephone Solicitations Act ("NCTSA") to prohibit North Carolina companies from continuing to market to persons' cell phones after a person requests that the company stop sending them marketing communications.

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

5.      The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Schultz, frequently face. For example, in 2023 alone, approximately 46.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited November 13, 2023). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

## Parties

6.      Schultz is an individual who brings this action on behalf of herself and all others similarly situated.

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

7.      Planet Automotive Group is a limited liability company organized under the law of North Carolina, is headquartered in North Carolina, and has been in good standing to transact business in North Carolina at all times relevant to this Complaint.

**Admitted.**

8.      Planet Automotive Group owns and operates multiple car dealerships in North Carolina.

**Denied.**

9.      Planet Automotive Group owns and operates dealerships such as Planet Mitsubishi Charlotte, Planet Mitsubishi Hickory and Planet Kia Charlotte.

**The Planet Automotive Defendants admit that Planet Automotive Group owns and operates Planet Mitsubishi Charlotte.  Except as expressly admitted herein, all other allegations are denied.**

4

10.     Planet Automotive Group markets its products and services, in part, through sending text message advertisements to consumers' cell phones.

**Admitted.**

11.     Helmi Felfel is the President of Planet Automotive Group.

**Admitted.**

12.     Mr. Felfel's LinkedIn profile states that "Planet Automotive Group is made up of Mitsubishi, Suzuki, Luxury Pre-Owned, Used Car and Buy Here Pay here dealerships."

**The Planet Automotive Defendants admit those words appear in Mr. Felfel's LinkedIn profile. Except as expressly admitted herein, all other allegations are denied.**

13.     At all times relevant to this Complaint, Planet Automotive Group owned and operated a website, located at domain, https://planetautomotivegroup.com ("the Planet Automotive Group website").

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

14.     The Planet Automotive Group website, at the top of the page includes multiple dealerships, including, "Planet Mitsubishi Hickory."

**Denied.**

5

15.     On information and belief, since being served with the instant Complaint, and since retaining counsel, Planet Automotive Group has taken down the Planet Automotive Group website, because as of the date of this filing, the website is no longer available.

**The Planet Automotive Defendants admit that the Planet Automotive Group web site is no longer available. Except as expressly admitted herein, all other allegations are denied.**

16.     Planet Automotive Group also has a Facebook page with Mr. Felfel's picture on the page.

**Admitted.**

17.     Planet Automotive Group's Facebook page states that Planet Automotive Group's website is "planetautomotivegroup.com" and includes a contact e-mail address ending in "@mitsubishi.com."

**The Planet Automotive Defendants admit that Planet Automotive Group's Facebook page, which has not been updated since 2015, reflects the web site address of planetautomotivegroup.com.   Except as expressly admitted herein, all other allegations are denied.**

18.     Planet Automotive Group's Facebook page also identifies one of Planet Automotive Group's websites as "www.planetmitsubishi.com."

**Denied.**

19.     Hickory is a limited liability company organized under the law of North Carolina, is headquartered in North Carolina, and has been in good standing to transact business in North Carolina at all times relevant to this Complaint.

**Admitted.**

6

20.     Hickory's managing member is also Mr. Felfel.

**The Planet Automotive Defendants admit that Hickory's managing member is Mr. Felfel.  Except as expressly admitted herein, all allegations are denied.**

21.     On May 22, 2023, Planet Automotive Group filed a motion to dismiss, asserting that it was improperly named as a Defendant, and that Hickory was the correct entity to be named.

**Admitted.**

22.     As part of its motion papers, Planet Automotive Group identified the assumed business name for Hickory as "Planet Mitsubishi Hickory" and the business address for Hickory as 1775 Catawba Valley Boulevard SE, Hickory, North Carolina 28602.

**Admitted.**

23.     There is a website associated with a Mitsubishi auto dealership located at 1775 Catawba Valley Boulevard SE, Hickory, North Carolina 28602, the domain for which is www.mountainmitsubishihickory.com.

**Admitted.**

24.     The www.mountainmitsubishihickory.com domain address, however, does not identify "Planet Mitsubishi Hickory" but rather a business transacting business as "Mountain Mitsubishi."

**Admitted.**

7

25.     In light of Planet Automotive Group's representations described above and Planet Automotive Group's assertion that Hickory is the correct Defendant, Plaintiff names both entities as discovery will determine who is ultimately responsible for the text messages at issue (and given the close connection between both entities, both entities may possibly be liable).

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

26.     Chatterspot is a Delaware corporation with its principal place of business in Michigan, who at all times material to this Complaint has been in good standing to transact business.

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

27.     Chatterspot provides marketing service to automobile dealerships nationwide, including in the State of North Carolina.

**Admitted.**

28.     Chatterspot's marketing services include providing automated text message marketing services to automobile dealerships by which Chatterspot will send automated marketing text messages on behalf of automobile dealerships.

**Admitted.**

8

29.     Chatterspot's website states that it provides a "Dealership Text & Email Automation Platform."

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

30.     Chatterspot's website features an article titled, "How this dealership keeps customers coming back: Text messages." The article states, "Planet Automotive Group has focused its marketing efforts and customer outreach on texting customers via Chatterspot software, and yielded substantial returns."

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

31.     The article also includes a quote from Mr. Felfel stating, "Yes, the customers might have been reached three, four, five different ways. But the bottom line with this, they respond."

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

32.     Chatterspot's website also includes reviews from its automobile dealership customers.  One dealership provides, in part, "Chatterspot is by far the best company that we have used for outbound text solicitations. Not only are they great at generating leads, but the detail with which they have helped us cater specific messages and follow-through procedures to handle our unique needs has absolutely blown me away. . . ."

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

## Jurisdiction and Venue

33.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case presents a federal question as the action seeks relief under the TCPA, 47 U.S.C. § 227 *et seq.*

**Admitted.**

34.     This Court has personal jurisdiction over the Planet Automotive Defendants as they transact business in the state, are organized under the laws of this state, and their principal places of business are in this state.

**Admitted.**

35.     This Court has personal jurisdiction over Chatterspot as they have transacted business in this state, entered into a contract with the Planet Automotive Defendants to provide text messages in this state, and, on the Planet Automotive Defendants' behalf, directed telemarketing text messages to persons in this state.

**Admitted on information and belief.**

36.     Venue is proper in this Court as a substantial portion of the events giving rise to this Complaint occurred in this District.

**The Planet Automotive Defendants admit that Plaintiff alleges a substantial portion of the alleged events giving rise to Plaintiff's Complaint occurred in this District. Except as expressly admitted herein, all other allegations are denied.**

10

## The Text Message Campaigns

37.     On information and belief, in 2021 or earlier, The Planet Automotive Defendants entered into a contract by which Chatterspot would send text messages on behalf of the Planet Automotive Defendants in which the text messages would market the Planet Automotive Defendants' products and services.

**The Planet Automotive Defendants admit that, in 2021 or earlier, Planet Automotive Group Hickory LLC d/b/a Planet Mitsubishi-Hickory entered into a contract by which Chatterspot would send text messages on behalf of Planet Mitsubishi-Hickory in which the text messages would market Planet Mitsubishi-Hickory's products and services. Except as expressly admitted herein, all other allegations are denied.**

38.     In early July 2021, a representative of the Planet Automotive Defendants advised a Chatterspot representative that numerous people were complaining about receiving text messages despite the fact they had previously unsubscribed from receiving text messages from the Planet Automotive Defendants.

**The Planet Automotive Defendants admit that on July 2, 2021, an employee at Planet Automotive Group sent the following email to a Chatterspot representative: "I have people blowing me up today about being removed from the buyyour vehicle campaign that is apparently running right now. In researching the accounts, I am seeing these people unsubscribed from texts in our CRM database already so not sure how they are still getting contacted. One in particular is Doug Harris, who is listed as do not contact, his phone # reads 111-111-1111 yet got a text today and is , lets just say, livid. How are these people being contacted still?" Except as expressly admitted herein, all other allegations are denied.**

39.     In August 2021, the Planet Automotive Defendants advised that Chatterspot was authorized to send marketing text messages to persons from whom the Planet Automotive Defendants had received permission to send such marketing messages.

**The Planet Automotive Defendants admit that in August 2021, an individual at Planet Mitsubishi-Hickory signed the following statement: "I hereby give HELM Technologies LLC (Chatterspot) authorization to text customers on our dealership's behalf based upon those that have purchased a vehicle or had service performed as of 03/01/19. We have**

11

received from these customers permission to send marketing text messages to them. We have reviewed our opt-in process and verbiage with our legal counsel and they have approved it to be compliant. We hold HELM harmless for any compliance issues that may arise from this process." Except as expressly admitted herein, all other allegations are denied.

40.     On information and belief, the agreement between the Defendants provided that Chatterspot would provide some or all of the content of the marketing text messages for the Planet Automotive Defendants.

**Defendant Planet Automotive Group Hickory LLC d/b/a Planet Mitsubishi Hickory admits that the agreement it had with Chatterspot provided as follows: "The Products that Licensee [Planet Automotive Group Hickory LLC] purchases by this Agreement include TEGA [Chatterspot] providing some or all Content for the messages Licensee sends to its customers." Except as expressly admitted herein, all other allegations are denied.**

41.     The agreement between the Defendants provided that the Planet Automotive Defendants would be responsible for reviewing and approving the text messages sent by Chatterspot on their behalf.

**Defendant Planet Automotive Group Hickory LLC d/b/a Planet Mitsubishi Hickory admits that the agreement it had with Chatterspot provided that Planet Automotive Group Hickory LLC was responsible for reviewing and approving the content of text messages sent by Chatterspot on its behalf. Except as expressly admitted herein, all other allegations are denied.**

42.     The agreement between the Defendants provided that the Planet Automotive Defendants had the right to review and approve the text message communications sent by Chatterspot.

**Defendant Planet Automotive Hickory LLC admits that the agreement it had with Chatterspot provided that Planet Automotive Hickory LLC had the right to review and approve the content of text message communications sent by Chatterspot. Except as expressly admitted herein, all other allegations are denied.**

12

43.     On information and belief, the text messages were sent on behalf of the Planet Automotive Defendants from Chatterspot's text messaging platform.

**Defendant Planet Automotive Hickory admits that some text messages were sent on its behalf from Chatterspot's text messaging platform. Except as expressly admitted herein, all other allegations, including whether Plaintiff's Paragraph 43 refers to specific text messages, are denied.**

44.     On information and belief, Chatterspot's text messaging platform includes an automated system in which when a recipient of a text message replied "stop", "quit" or a similar request to no longer receive text messages, the platform will then send an automated text message to the recipient confirming the recipient will no longer receive text messages.

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

## The Schultz Text Messages

45.     Schultz is the owner of a cell phone. Her phone number is 678-XXX-3865.

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

13

46. Schultz's phone is a residential line that is used primarily for personal purposes, namely, to communicate with friends and family members.

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

47. Schultz's cell phone account is held in her personal name.

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

48. On November 24, 2021, Schultz received a text message sent by Chatterspot on behalf of the Planet Automotive Defendants about a special on new and pre-owned vehicles.

**Denied.**

49. On November 24, 2021, Schultz replied to the text message, "Stop."

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

50. Immediately after texting "Stop," Chatterspot, on behalf of the Planet Automotive Defendants, sent a responsive text message stating, "Sorry to see you go. You have been opted out of our rewards program. To opt back in, call 888-702-8350, option 2."

**Denied.**

14

51.     Despite confirming it would no longer send Schultz text messages, Chatterspot, on behalf of the Planet Automotive Defendants, sent Schultz another marketing text message on December 13, 2021, as follows:



**Denied.**

52.     On December 16, 2021, Chatterspot, on behalf of the Planet Automotive Defendants sent Schultz another marketing text message, stating:

> Alison, This is Mike with Planet Mitsubishi Hickory. Our Holiday Service Event is happening now! Through the end of the month, get our Holiday Service Special for just $99.99. This includes a heating system pressure test, coolant drain and replacement, belts and hoses check, and a wiper blade inspection. Don't miss out! Please click the link below to receive your service coupon and schedule and appointment. http://c.tiny-url.cc/3ac0h

15

**Denied.**

53.     On December 23, 2021, Chatterspot, on behalf of the Planet Automotive

Defendants sent Schultz another marketing text message, stating:

> Alison, this is Brody, the Sales Manager at Planet Mitsubishi Hickory. Our holiday
> Gift Card Special is happening now! If you come in and upgrade your ride before
> Christmas, you will receive a $1,000 American Express Gift Card with your
> purchase. Don't miss out! Please click the link below to discuss this offer with us
> today. https://c.tiny-utl.cc/3bm4m

> **Denied.**

54.     On January 17, 2022, Chatterspot, on behalf of the Planet Automotive Defendants,

sent Schultz another marketing text message, stating:

> Alison, This is the Service Department at Planet Mitsubishi Hickory. Our New Year
> Service Special is happening now! Through the end of the month, get an oil and
> filter change, front wiper replacement, fluid check and refill, tire rotation, battery
> and brake inspection, and much more for just $179.75! Don't miss out! Please click
> the link below to receive your service coupon and schedule an appointment.
> https://c.tiny-url.cc/3ep93

> **Denied.**

55.     On January 24, 2022, Chatterspot, on behalf of the Planet Automotive Defendants,

sent Schultz another marketing text message, stating:

> This is the Customer Care Team at Planet Mitsubishi Hickory. Our New Year Sales
> Event is happening now! Through the end of the month, lease a 2022 Mitsubishi
> Outlander for $259/mo. for 36 months with $3,544 due at signing. We are also
> offering 1.9% APR financing for 60 months plus a $250 APR customer rebate!
> Don't miss out! Please click the link below to discuss these offers with us today.
> https://c.tiny-url.cc/3gs51

> **Denied.**

16

56.     Defendants' conduct violated the privacy rights of Schultz and the putative class members, as they were subjected to annoying and harassing text messages. Defendants' texts intruded upon the rights of Schultz and the putative class members to be free from invasion of their interest in seclusion.

**Denied.**

57.     Defendants' conduct caused Schultz and the putative class members to waste time addressing and/or otherwise responding to the unwanted text messages.

**Denied.**

58.     On information and belief, Defendants sent text messages to Schultz and the putative class members for the purpose of selling the Planet Automotive Defendants' products and services.

**Denied.**

## Direct and Vicarious Liability

59.     On May 9, 2013, the FCC determined that strategies such as the Planet Automotive

Defendants' strategy here – to utilize a third-party for their marketing text message campaigns –

was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not

avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for
> telemarketing intrusions. This would particularly be so if the
> telemarketers were judgment proof, unidentifiable, or located outside
> of the United States, as is often the case. Even where third-party
> telemarketers are identifiable, solvent, and amenable to judgment
> limiting liability to the telemarketer that physically places the call
> would make enforcement in many cases substantially more expensive
> and less efficient, since consumers (or law enforcement agencies)
> would be required to sue each marketer separately in order to obtain
> relief. As the FTC noted, because "[s]ellers may have thousands of
> "independent" marketers, suing one or a few of them is unlikely to
> make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations

omitted).

**The Planet Automotive Defendants lack sufficient knowledge or information to form
a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny
the same.**


60.     Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability,

including the assertion that a seller's liability requires a finding of formal actual agency and

immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n.

107.

**The Planet Automotive Defendants lack sufficient knowledge or information to form
a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny
the same.**

61.     The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

62.     Upon information and belief, the Planet Automotive Defendants hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by Chatterspot.

**Defendant Planet Automotive Hickory admits that it hired Chatterspot to perform text messaging marketing for it and that Chatterspot did so.  Except as expressly admitted herein, all other allegations are denied.**

63.     Chatterspot had actual and/or apparent authority to act on behalf of the Planet Automotive Defendants.

**This paragraph contains a legal conclusion, which Defendants deny.  Except as expressly admitted herein, all other allegations are denied.**

64.     The Planet Automotive Defendants had the ability to direct and control Chatterspot's business activities, as it relates to marketing Planet Automotive's products and services.

**Defendant Planet Automotive Hickory admits that it had the ability to review and alter the content of text messages created by Chatterspot. Except as expressly admitted herein, all other allegations are denied.**

19

65.     The Planet Automotive Defendants acted as principals to Chatterspot, which acted as the Planet Automotive Defendants' agent.

**This paragraph contains a legal conclusion, which Defendants deny.  Except as expressly admitted herein, all other allegations are denied.**

66.     The Planet Automotive Defendants are not permitted under the law to outsource and contract its way out of liability by directing and benefitting from Chatterspot's TCPA violations.

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph and thus deny the same.**

67.     As to any unlawful text message under the TCPA sent by Chatterspot on the Planet Automotive Defendants' behalf to Plaintiff and the putative TCPA class members, the Planet Automotive Defendants are vicariously liable and Chatterspot is directly liable.

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph and thus deny the same.**

## Class Allegations

68. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Schultz brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of Rule 23.

**Denied.**

69. Schultz seeks to represent the following classes:

**TCPA Class:** All persons in the United States from four years prior to the initial filing of this action through class certification to whom Chatterspot, on behalf of the Planet Automotive Defendants: (1) sent text messages marketing the Planet Automotive Defendants products or services, (2) sent more than one text message to the person in a twelve-month period, and, (3) sent such text messages after the person requested that Defendants stop sending them text messages.

**NCTSA Class:** All persons in the United States from four years prior to the initial filing of this action to whom Chatterspot, on behalf of the Planet Automotive Defendants: (1) sent text messages marketing the Planet Automotive Defendants products or services, and, (2) sent such text messages after the person requested to no longer receive such text messages.

**The Planet Automotive Defendants deny Plaintiff's eligibility to represent the named classes. Except as expressly admitted herein, all other allegations are denied.**

70. Schultz reserves the right to add administrative subclasses, or to amend the definition of the proposed classes, during the lawsuit proceedings.

**Denied.**

21

71.     The members of the proposed classes are so numerous that joinder of all members is impracticable. Schultz reasonably believes that hundreds of people have been harmed by Defendants' actions. The phone numbers of the members of the proposed classes are readily identifiable through records available to Defendants.

**Denied.**


72.     Most members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

**Denied.**


73.     Common questions of law and fact exist as to all members of the proposed classes and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a.      Whether Defendants sent text messages to Schultz and the putative class members after they requested that Defendants no longer send them text messages;

b.      Whether Defendants' conduct violates 47 U.S.C. § 227(c);

c.      Whether Defendants' conduct violates the rules and regulations implementing the TCPA;

d.      Whether Defendants' conduct violates the NCTSA; and,

e.      Whether Schultz and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

**Paragraph 73 and all subparagraphs are Denied.**

74.     Schultz's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed classes and are based on the same legal theories.

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

75.     Schultz and her counsel will fairly and adequately protect the interests of the members of the proposed classes. Schultz's interests do not conflict with the interests of the proposed classes she seeks to represent. Schultz has retained lawyers who are competent and experienced in class action litigation, including TCPA litigation and consumer law.

**Denied.**

76.     Schultz's counsel will vigorously litigate this case as a class action, and Schultz and her counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

23

77.     A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed classes had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

**Denied.**

78.     In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

**Denied.**

79.     Questions of law and fact, particularly the propriety of sending text messages to persons who requested that Defendants no longer text them, *i.e.*, to place them on Defendant' internal do not call lists, predominate over questions affecting only individual members.

**Denied.**

80.     Defendants have acted or refused to act on grounds that apply generally to the classes, making final injunctive relief or corresponding declaratory relief appropriate with respect to the classes as a whole.

**Denied.**


## Count I - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* – Against All Defendants

81.     Schultz incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

**The Planet Automotive Defendants re-assert and incorporate by reference their previous responses and defenses as if fully set forth herein.**


82.     The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

83.     The regulations prescribed under Section 227(c) require companies like Defendants, who engage in telemarketing to institute "procedures for maintaining a list of persons who request not to receive telemarketing calls on or behalf of that person or entity." *See* 47 C.F.R. § 64.1200(d).

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus deny the same.**

84.     These procedures must meet several minimum standards, including, but not limited to:

(1) *Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) *Training of personnel engaged in telemarketing.* Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) *Identification of sellers and telemarketers.* A person or entity making a call for telemarketing purposes must provide the called party with the name of the

individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

**(5)** *Affiliated persons or entities.* In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

**(6)** *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

*See* 47 C.F.R. § 64.1200(d)(1)-(6).

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph and all subparagraphs, and thus deny the same.**

85.     Defendants failed to maintain and/or implement these minimum standards by repeatedly sending text messages to Schultz and the putative class members after Schultz and the putative class members requested that Defendants stop sending them text messages.

**Denied.**

86.     In addition, the TCPA allows the Court to enjoin Defendants from sending text messages to phone numbers that should have been placed on Defendants' internal do not call lists.

*See* 47 U.S.C. §§ 227(c)(5)(A).

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph and all subparagraphs, and thus deny the same.**

27

87. By sending text messages to the phones of Schultz and the putative class members after their numbers should have been placed on Defendants' internal do not call lists, Defendants violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

**Denied.**

88. Defendants knew or should have known that Schultz and the putative class members did not wish to receive text messages as such persons expressly advised Defendants that they did not wish to receive text messages from Defendants.

**Denied.**

89. Schultz and the putative class members are entitled to damages of $500.00 per violation for each text message sent by Defendants in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Defendants willfully violated the TCPA.

**Denied.**

**Count II**
**Violations of The North Carolina Telephone Solicitations Act ("NCTSA"),**
**N.C. Gen. Stat. § 75-100 *et seq*.**
**as to the Planet Automotive Defendants**

90. Schultz incorporates the previous paragraphs as if fully stated in this Count.

**The Planet Automotive Defendants re-assert and incorporate by reference their previous responses and defenses as if fully set forth herein.**

28

91.     The Planet Automotive Defendants are "telephone solicitors" as defined by Section 75-101(10) of the NCTSA because Defendants are each a "business, or other legal entity doing business in [North Carolina] . . . that makes or attempts telephone solicitations."

**This Paragraph calls for a legal conclusion to which no response is required. To the extent that any response is required, the Planet Automotive Defendants deny. Except as expressly admitted herein, all other allegations are denied.**

92.     Schultz is a "telephone subscriber" as defined by Section 75-101(11) of the NCTSA because she "subscribes to . . . a wireless telephone company."

**This Paragraph calls for a legal conclusion to which no response is required. To the extent that any response is required, the Planet Automotive Defendants deny. Except as expressly admitted herein, all other allegations are denied.**

93.     The text messages sent to Schultz and the putative NCTSA Class members are each a "telephone solicitation" as defined by Section 75-101(10) of the NCTSA because they each are a "text communication . . . over a . . . wireless telephone network that is made by a telephone solicitor for the purpose of soliciting or encouraging the purchase or rental of, or investment in, property, goods or services . . . ."

**This Paragraph calls for a legal conclusion to which no response is required. To the extent that any response is required, the Planet Automotive Defendants deny. Except as expressly admitted herein, all other allegations are denied.**

94.     The NCTSA is violated where a "telephone solicitor . . . make[s] a telephone solicitation to a telephone subscriber's telephone number if the telephone subscriber previously has communicated to the telephone solicitor a desire to no receive no further telephone solicitations from the telephone solicitor to that number." N.C. Gen. Stat. § 75-102(b).

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph and all subparagraphs, and thus deny the same.**

29

95. Schultz communicated to the Planet Automotive Defendants that she did not want to receive text messages from Defendants on her cell phone, and Defendants confirmed they would no longer send such messages.

**Denied.**

96. The Planet Automotive Defendants repeatedly ignored Schultz's request to stop sending her text messages and sent her an additional five marketing text messages.

**Denied.**

97. On information and belief, Planet Automotive Defendants were also advised by the putative NCTSA class members that they no longer wished to receive text messages regarding the Planet Automotive Defendants products and/or services.

**Denied.**

98. On information and belief, the Planet Automotive Defendants also ignored the requests of the NCTSA putative class members to stop being sent text messages and continued to send text messages to the putative class members.

**Denied.**

99.     The Planet Automotive Defendants' failure to comply with Schultz's and the putative class members' requests to stop sending them text messages violates the NCTSA.

**Denied.**

100.    The penalty for violating the NCTSA is $500 for the first violation, $1,000 for the second violation and $5,000 for the third and any subsequent violations. N.C. Gen. Stat. § 75-105(a)(1).

**The Planet Automotive Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph and thus deny the same.**

101.    A company that violates the NCTSA is also required to pay the opposing party's "reasonable attorneys' fees." N.C. Gen. Stat. § 75-105(d).

**Plaintiff misquotes the text of the NCTSA; denied as stated.  Except as expressly admitted herein, all allegations are hereby denied.**

31

## Affirmative Defenses

### First Affirmative Defense
**Proper Procedures in Place**

The Planet Automotive Defendants plead as an affirmative defense that they have established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations that would violate the TCPA.

### Second Affirmative Defense
**Plaintiff Opted Back In**

To the extent that the Planet Automotive Defendants received consent to send subsequent texts to Plaintiff or the proposed class by Plaintiff and/or the proposed class's opting back in to receiving messages, whether through customer agreements, written, or verbal statements, or otherwise, the claims are barred.

### Third Affirmative Defense
**Thirty Day Safe Harbor for NCTSA Claims**

The Planet Automotive Defendants plead as an affirmative defense that the NCTSA allows telephone solicitors up to 30 days to cease communicating with a telephone subscriber who has asked not to be further contacted.

### Fourth Affirmative Defense
**Compliance with the Time Requirements within the Telemarketing Sales Rule**

The Planet Automotive Defendants plead as an affirmative defense to Plaintiff's NCTSA claims that the Planet Automotive Defendants' compliance with the time requirements within the Telemarketing Sales Rule for incorporating and complying with updated versions of the "Do Not Call" Registry constitutes compliance with North Carolina law.

32

**Prayer for Relief**

**WHEREFORE** Defendants Planet Automotive Group LLC and Planet Automotive Group Hickory LLC pray the Court for the following relief

a.  That the Court deny Plaintiff's motion pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), and deny certification of this action as a class action, denying Schultz's appointment as class representative;

b.  That the Court enter judgment in favor of the Planet Automotive Defendants on all Plaintiff's and the proposed class's claims;

c.  That the Court award the Planet Automotive Defendants' attorneys' fees as permitted by the NCTSA;

d.  That the Court award the Planet Automotive Defendants all expenses of this action, and require that Plaintiff pay the costs and expenses of class notice and administration; and,

e.  That the Court award the Planet Automotive Defendants such further and other relief the Court deems just and proper.

This the 7th day of December, 2023.


**HULL & CHANDLER, P.A.**

By: /s/ Elizabeth Vennum
Elizabeth Vennum
N.C. State Bar No. 49747
Counsel for Defendant
Hull & Chandler
1009 East Boulevard
Charlotte, NC 28203
Tel. (704) 375-8488
Fax (704) 375-8487
lvennum@lawyercarolina.com

33

**<u>Certificate of Service</u>**

This is to certify that on this date the undersigned filed the foregoing using the Court's

CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Craig Shapiro                      Christopher E. Roberts
Shapiro Law Office PLLC        Butsch Roberts & Associates
644 Holly Springs Road, Suite 195    231 S. Bemiston Avenue, Suite 260
Holly Springs, North Carolina 27540   Clayton, Missouri 63105
craig@shapirolawofficepllc.com      croberts@butschroberts.com

This the 7th day of December, 2023.

**HULL & CHANDLER, P.A.**

                     By: <u>/s/ Elizabeth Vennum</u>
                            Elizabeth Vennum

34